IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA POLANCO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 21-cv-06516-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS THE BANE ACT CLAIM** |

On May 30, 2020, officials at California Department of Corrections and Rehabilitation (CDCR) and San Quentin State Prison transferred 122 inmates from the California Institution for Men (CIM), where there were 600 confirmed COVID-19 cases, to San Quentin, where there were none. The inmates were transported on crowded buses without having been tested for COVID-19. At San Quentin, they were housed in open-air cells with the local population. During the ensuing outbreak, Defendants tasked Sergeant Gilbert Polanco with bringing inmates to the hospital in unsanitized vehicles and without personal protective equipment (PPE). Polanco contracted COVID-19 and died.

Previously, the Court held that Plaintiffs, Polanco's successors-in-interest, had plausibly alleged that the CDCR and San Quentin Defendants were deliberately indifferent to Polanco's constitutional rights. See Order on MTD (dkt. 38). But the Court dismissed the Bane Act claim because Plaintiffs had not pleaded that any defendant had interfered with Polanco's rights "by threat, intimidation, or coercion." Id. at 29 (quoting Cal. Civ. Code § 52.1). Plaintiffs amended their complaint, and Defendants again move to dismiss this claim. The Court GRANTS the motion.

## I.  BACKGROUND

The Court summarizes only the key facts; a more detailed summary is in the Court's prior order.  See Order on MTD at 2-7.

On May 30, 2020, Defendants ordered the transfer to San Quentin of 122 CIM inmates.  FAC (dkt. 39) ¶ 34.  "[M]ost or all of the men who were transferred had not been tested for COVID-19 for at least approximately three or four weeks."  Id.  "The transferred inmates also were not properly screened for current symptoms immediately before being placed on a bus."  Id.  The inmates were "packed onto buses in numbers far exceeding COVID-capacity limits that CDCR had mandated for inmate safety."  Id. ¶ 34.  At San Quentin, the new inmates were placed in an open-air housing unit.  Id. ¶ 35.  Within days, 25 had tested positive for COVID-19.  Id.  "Over three weeks, the prison went from having no cases to 499 confirmed cases."  Id.  By July 7, more than 1,300 inmates and 184 staff members had tested positive.  Id. ¶ 44.

As of June 2020, Polanco had "multiple high-risk factors for COVID-19," including obesity, diabetes, hypertension, diabetic nephropathy, hyperlipidemia, thrombocytopenia, and age (he was 55).  Id. ¶ 53.  His obesity was "obvious."  Id.

When San Quentin faced staffing shortages—in part because corrections officers "call[ed] in sick" or "out of fear"—Polanco "work[ed] additional hours, double shifts, and often [came] home to San Jose to sleep for a scant few hours before making the trip back up."  Id. ¶ 55.  "[A]s the Active Lieutenant on Duty," Polanco was required "to transport sick inmates in need of care, including inmates sick with COVID-19, to local hospitals and refused to provide employees or inmates with appropriately sanitized vehicles and equipment, or with legally required N-95 respirators or other PPE, even though appropriate PPE was available to Defendants."  Id. ¶ 56.  Prison staff, including Polanco, "were pleading for proper personal protective equipment."  Id. ¶ 42.  But they were told that "to the extent San Quentin had such PPE, it was reserved for medical professionals and not front-line correctional officers and supervisors."  Id.

Polanco became infected with COVID-19 around June 21, 2020.  Id. ¶ 58.  On June

2

26, he began experiencing symptoms. Id. On June 28, he had a drive-thru test and was informed on June 30 that it came back positive. Id. On August 9, he died of complications caused by COVID-19. Id. ¶ 60.

The Court previously permitted most of Plaintiffs' claims to proceed, and Defendants appealed the Court's denial of qualified immunity as to the Section 1983 claims. See Polanco v. California (appeal docketed, No. 22-15496). But the Court dismissed Plaintiffs' Bane Act claim:

> [Plaintiffs] do not plead that any Defendant used a "threat, intimidation, or coercion." Plaintiffs seem to assume they have done so simply by pleading a Section 1983 claim. See Opp. at 17-18. But where courts hold that facts underlying a Section 1983 violation necessarily give rise to a Bane Act claim, they do so in the context of excessive force or wrongful arrest, where "threat, intimidation, or coercion" are invariably present. See, e.g., Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 801–02 (9th Cir. 2018) (excessive force); Reese, 888 F.3d at 1035–36 (same); cf. Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013) (stating, a bit imprecisely, that "the elements of [an] excessive force claim under § 52.1 are the same as under § 1983"). In rejecting a Bane Act claim, a California Court of Appeal recently distinguished the excessive force/wrongful arrest cases on the same ground, emphasizing that "[a]ny arrest without probable cause involves coercion." Schmid v. City & Cty. of San Francisco, 60 Cal. App. 5th 470, 483 (2021). Unlike an excessive force claim, a failure-to-protect claim does not automatically encompass "threat, intimidation, or coercion." Of course, in some broad sense, "coercion" is implicated any time that an employer asks an employee to do his job. Cf. Compl. ¶ 84 (seeming to allege that the work conditions constituted "threat, intimidation, or coercion"). But as currently pleaded, Plaintiffs do not come very close to suggesting that the "coercion" attendant with Polanco's employers instructing him to do his job during the COVID-19 outbreak at San Quentin was a "threat, intimidation, or coercion" within the scope of the Bane Act.

Id. at 29-30.

In their amended complaint, Plaintiffs included more allegations. They allege that the "increased threat of grave illness, harm and death" was "inherently threatening" to Polanco and that Defendants "compelled [him] to be subjected to" these threats "upon pain of losing his career and means of financial support for himself and his family." FAC ¶ 84. Plaintiffs further allege that Defendants:

3

> requir[ed] [him] to work in conditions that Defendants created of unnecessarily heightened danger of contracting a deadly communicable disease, upon pain of losing his career and his family's financial support;
>
> compel[ed] [him] to work and be in an environmentally toxic and deadly environment without adequate personal protective equipment, despite the availability of such equipment; [and] . . .
>
> requir[ed] [him] to repeatedly transport COVID-sick inmates to hospitals in unsanitized vehicles and without adequate PPE.

Id. ¶ 85(a), (b), (d).

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either "a cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed,

4

undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

### III.   DISCUSSION

The Court dismisses the Bane Act claim because Plaintiffs' new allegations still do not establish that the Defendants interfered with Polanco's rights "by threat, intimidation, or coercion." Cal. Civ. Code § 52.1.

The Bane Act "provides a cause of action for [1] violations of a plaintiff's state or federal civil rights [2] committed by 'threats, intimidation, or coercion.'" Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). The "threat, intimidation, or coercion" element need not be independent from the rights violation. Reese v. Cty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018). In cases involving wrongful arrest or excessive force, the "threat, intimidation, or coercion" element may be satisfied by "specific intent" to violate the victim's rights. See Schmid v. City & Cty. of San Francisco, 60 Cal. App. 5th 470, 483 (2021) ("Any arrest without probable cause involves coercion, and where accompanied by evidence of specific intent to violate the arrestee's Fourth Amendment rights, such an arrest may provide the basis for a Bane Act claim."); see Reese, 888 F.3d at 1043-44 (excessive force plus specific intent satisfies the Bane Act). Where the rights violation is "clearly delineated and plainly applicable," specific intent may be shown by "[r]eckless disregard of the 'right at issue.'" Cornell v. City & Cty. of San Francisco, 17 Cal. App. 5th 766, 803, 804 (2017).

Plaintiffs still fail to allege that any defendant used "threat, intimidation, or coercion" while violating Polanco's rights. They allege that Defendants "requir[ed]" or "compelled" him to work "upon pain of losing his career." See FAC ¶ 85(a). Yet the same is true in all employment situations. The bare fact that a supervisor violated an employee's rights at work does not establish that the rights violation was "committed 'by threat, intimidation, or coercion.'" See Chaudhry, 751 F.3d at 1105. Plaintiffs are right that "the threat of losing one's job and career of almost 35 years, as the whole support for

one's family, would be frightening and deeply upsetting to a reasonable person." Opp. (dkt. 47) at 12. But just because a violation is deeply upsetting does not mean it involves "threat, intimidation or coercion."

Plaintiffs are mistaken that Cornell held the "threat, intimidation, or coercion" element can always be "proven simply by the violation of a constitutional right if done with specific intent." Opp. at 6. Cornell cabined that rule to unlawful-arrest cases. In a case involving "an unlawful arrest," the key question is whether "the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not [ ] whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." 17 Cal. App. 5th at 801–02. That's because some measure of coercion is "inherent[ly]" present in a wrongful-detention case, so the question is whether there is specific intent present to make the coercion sufficiently "egregious." See id. at 801-02. Cornell did not hold that specific intent is an all-purpose substitute for coercion. Such a holding would essentially rewrite "threat, intimidation, or coercion" out of the Act.

Without more, allegations of deliberately indifferent failure to protect an employee do not amount to a "threat, intimidation, or coercion." As noted above, the use of excessive force with specific intent may amount to a "threat, intimidation, or coercion." See Reese, 888 F.3d at 1044-45; Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 802 (9th Cir. 2018); cf. Sandoval v. Cnty. of Sonoma, 912 F.3d 509, 520 (9th Cir. 2018) (coercion element might be satisfied where the defendant, with specific intent, impounded a plaintiff's vehicle in violation of the Fourth Amendment). And a defendant who acts with deliberate indifference toward an inmate may satisfy the "threat, intimidation, or coercion" element, as the custody context makes that violation especially coercive.[1] See,

---

[1] Plaintiffs disagree with this distinction. They contend that it "would be anomalous to provide less redress under the Bane Act to a state employee who can plead a due process violation with subjective indifference than courts provide to convicted prisoners." Opp. at 9. The Court does not find this "anomalous." It seems only logical to conclude that a violation of a right involves more coercion when the victim is in custody than when he is an employee who may refuse a task or leave his job.

6

e.g., M.H. v. Cnty. of Alameda, 90 F. Supp. 3d 889, 898-99 (N.D. Cal. 2013) (coercion element satisfied where plaintiffs alleged deliberate indifference to an inmate's medical needs); Atayde v. Napa State Hosp., 2016 WL 4943959, at *8 (E.D. Cal. Sept. 16, 2016) (similar); Luttrell v. Hart, 2020 WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020) (coercion element satisfied where plaintiffs alleged deliberate indifference to an inmate's safety); McKibben v. McMahon, 2015 WL 10382396, at *4 (C.D. Cal. Apr. 17, 2015) (coercion element satisfied where LGBT inmates alleged they were forced into "an untenable choice" between facing harassment in the general prison population and being housed in inferior conditions); cf. Hampton v. California, 2022 WL 838122, at *12 (N.D. Cal. Mar. 20, 2022) (permitting, without much analysis, a San Quentin inmate's Bane Act claim regarding the COVID-19 transfer). But no case has found a "coercion" simply because a defendant (with deliberate indifference) failed to protect her employee.

Cases permitting Bane Act claims in the employment context are readily distinguishable. An employee certainly pleads "threat, intimidation, or coercion" where his supervisor "yelled at him in an intimidating manner [and] threatened him with physical violence for not completing work assignments" on account of his race. Stamps v. Superior Ct., 136 Cal. App. 4th 1441, 1444 (Ct. App. 2006). The same could be true in a hostile work environment where an employer permits a co-worker to sexually harass the plaintiff and "threaten[] violence that was intimidating." Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1289 (9th Cir. 2001).

Some language in certain district court opinions might be read to suggest that specific intent or deliberate indifference always satisfies the "threat, intimidation, or coercion" element. To the extent that these courts suggested this conclusion, the Court disagrees. Justice Baxter of the California Supreme Court once mused that "it should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right" as "delivered in the form of a threat, intimidation, or coercion" in violation of the Bane Act. Venegas v. Cnty. of Los Angeles, 32 Cal. 4th 820, 851 (2004) (Baxter, J., concurring). Although Justice Baxter's prediction has often been

7

borne out, it is not borne out here.

Because it previously dismissed this claim on the same ground, the Court denies leave to amend as futile. See Leadsinger, 512 F.3d at 532.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and denies leave to amend.[2]

**IT IS SO ORDERED.**

Dated: May 16, 2022



CHARLES R. BREYER
United States District Judge

---

[2] Because the alleged conduct does not satisfy the elements of a Bane Act claim, the Court does not reach whether the Bane Act claim here would be barred by the workers compensation exclusivity rule. See Gunnell v. Metrocolor Lab'ys, Inc., 92 Cal. App. 4th 710, 719 (2001).