ROB BONTA
Attorney General of California
FIEL D. TIGNO
Supervising Deputy Attorney General
EDWARD GARCIA, JR.,
Deputy Attorney General
State Bar No. 173487
JOSHUA C. IRWIN
Deputy Attorney General
State Bar No. 209437
 1515 Clay Street, 20th Floor, P.O. Box 70550
 Oakland, CA  94612-0550
 Telephone:  (510) 879-0278
 E-mail:  Joshua.Irwin@doj.ca.gov;
 Edward.Garcia@doj.ca.gov
*Attorneys for Defendants CDCR, Diaz, Tharratt,*
*Davis, Broomfield, Cryer, Pachynski & Garrigan*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GILBERT POLANCO, Deceased, by and through his Co-Successors in Interest, PATRICIA POLANCO, VINCENT POLANCO, and SELENA POLANCO, as Co-Successors in Interest and Individually,**<br><br>Plaintiffs,<br><br>v.<br><br>**STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR); et al.,**<br><br>Defendants. | 3:21-cv-06516<br><br>**STIPULATION AND [~~PROPOSED~~] ORDER GRANTING THE FILING OF AN AMENDED ANSWER BY DEFENDANTS CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, RALPH DIAZ, RONALD DAVIS, RONALD BROOMFIELD, CLARENCE CRYER, DR. ALISON PACHYNSKI, DR. SHANNON GARRIGAN AND TINA THARRATT TO PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:<br>Time:<br>Courtroom:<br>Judge:        The Honorable Charles R. Breyer<br>Trial Date:<br>Action Filed: August 24, 2021 |

1

TO THE COURT: The Plaintiffs and the answering Defendants in this action (the parties), by and through their respective counsel of record, hereby agree and request as follows, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, that the answering Defendants (listed in the stipulation title) may file an amended answer to the operative Second Amended Complaint. Pursuant to N.D. Cal. Civ. Local Rule 10-1, the new proposed pleading that would become the operative answer in this case is attached to this Stipulation as Exhibit B, which adopts all the amendments and form that are shown in track-changes formatting in the Exhibit A attached hereto. This request for an order granting the filing of this answer is for the following reasons:

### STIPULATION

1. Whereas Defendants have agreed to Plaintiffs' request to withdraw and strike two paragraphs (paragraphs 7 and 8) stated in the Affirmative Defense sections of their current operative answers (Document 75 and Document 81, respectively).

2. Whereas the current operative complaint is the Second Amended Complaint (Document 80).

3. Therefore, the parties agree and stipulate that Defendants may file an amended answer to the Second Amended Complaint with the content shown in **Exhibit A** in track-changes formatting, for the sole purpose of filing a superseding answer on behalf of all Defendants to the Second Amended Complaint.

4. This agreement was reached to resolve discovery disputes between the parties relating to the withdrawn and stricken two paragraphs.

5. If the Court grants this stipulation, Defendants will accept all changes shown in Exhibit A and file and serve the resulting answer, as shown in Exhibit B.

///

///

///

///

///

2

It is so STIPULATED by the parties.

Dated:  March 20, 2026                    KEKER, VAN NEST & PETERS LLP


                                          By:    /s/ Amrutha D. Dorai


                                          KHARI J. TILLERY
                                          SARAH SALOMON
                                          KRISTIN HUCEK
                                          TAYLOR REEVES
                                          AMRUTHA DORAI

                                          Attorneys for Plaintiffs Patricia Polanco,
                                          Vincent Polanco, and Selena Polanco



Dated:  March 20, 2026                    Respectfully submitted,

                                          ROB BONTA
                                          Attorney General of California
                                          FIEL D. TIGNO
                                          Supervising Deputy Attorney General
                                          EDWARD GARCIA, JR.,
                                          Deputy Attorney General




                                          By:    /s/ Joshua C. Irwin
                                                  JOSHUA C. IRWIN

                                          Attorneys for Defendants CDCR, Diaz,
                                          Tharratt, Davis, Broomfield, Cryer,
                                          Pachynski, and Garrigan

3

## CIVIL LOCAL RULE 5.1 ATTESTATION

Pursuant to Local Rule 5–1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from the other signatory(ies) to this stipulation.

Dated: March 20, 2026                              /s/ Joshua C. Irwin

                                                   JOSHUA C. IRWIN

                                                   Counsel for Defendants

4

[~~Proposed~~]

ORDER GRANTING LEAVE TO FILE AMENDED ANSWER

Based on the filed Stipulation of the parties, and good cause appearing, the Court approves the Stipulation and hereby Grants leave for Defendants to file an amended answer to the Second Amended Complaint in the form set forth in the Stipulation at Exhibit B.
 The Second Amended Complaint shall be filed as a separate brief.

DATED:  March 23, 2026         _____

                                        The Hon. Charles R. Breyer

Stipulation and [~~Proposed~~] Order for Defendants to File Amended Answer to SAC  (3:21-cv-06516)

# EXHIBIT A

ROB BONTA
Attorney General of California
FIEL D. TIGNO
Supervising Deputy Attorney General
EDWARD GARCIA, JR.,
Deputy Attorney General
State Bar No. 173487
JOSHUA C. IRWIN
Deputy Attorney General
State Bar No. 209437
 1515 Clay Street, 20th Floor, P.O. Box 70550
 Oakland, CA  94612-0550
 Telephone:  (510) 879-0278
 E-mail:  Joshua.Irwin@doj.ca.gov;
 Edward.Garcia@doj.ca.gov
*Attorneys for Defendants CDCR, Diaz, Tharratt,*
*Davis, Broomfield, Cryer, Pachynski & Garrigan*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GILBERT POLANCO, Deceased, by and through his Co-Successors in Interest, PATRICIA POLANCO, VINCENT POLANCO, and SELENA POLANCO, as Co-Successors in Interest and Individually,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR) et al.;**<br><br>Defendants. | 3:21-cv-06516<br><br>**AMENDED ANSWER OF DEFENDANTS CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, RALPH DIAZ, TINA THARRATT, RONALD DAVIS, RONALD BROOMFIELD, CLARENCE CRYER, DR. ALISON PACHYNSKI, AND DR. SHANNON GARRIGAN TO PLAINTIFFS' FIRST SECOND AMENDED COMPLAINT;**<br><br>**DEMAND FOR A JURY TRIAL**<br><br>Date:<br>Time:<br>Courtroom:<br>Judge:      The Honorable Charles R. Breyer<br>Trial Date:<br>Action Filed: August 24, 2021 |

1

Defs. CDCR, Diaz, Tharratt, Davis, Broomfield, Cryer, Pachynski, Garrigan's Answer to FACSAC (3:21-cv-06516)

Defendants the California Department of Corrections & Rehabilitation (CDCR[1]), Ralph Diaz, Tina Tharratt (sued as alleged personal representative of the Estate of Robert S. Tharratt), Ronald Davis, Ronald Broomfield, Clarence Cryer, Alison Pachynski, M.D., and Shannon Garrigan, M.D. (Defendants) answer Plaintiffs' First Second Amended Complaint (Document 3980) and deny, admit, and allege, as follows:

JURISDICTION

1. Defendants admit that Plaintiffs have filed an action alleging violation of the Constitution and Rehabilitation Act, brought pursuant to 42 U.S.C. section 1983. Defendants admit jurisdiction of the United State District Court for the Northen District of California. Except as expressly admitted, Defendants deny the other factual allegations in paragraph 1.

2. Defendants admit that venue is proper in this judicial district.

INTRADISTRICT ASSIGNMENT

3. Defendants admit the matter is properly assigned to the San Francisco Division.

PARTIES AND PROCEDURE

4. Defendants admit that Plaintiff Gilbert Polanco (Sergeant Polanco) is deceased. Many of the allegations are legal conclusions, but to the extent that any response is required, Defendants deny the allegations in paragraph 4. Except as expressly admitted, Defendants deny the factual allegations in paragraph 4, including based on lack of sufficient information to determine the truth of the allegations.

5. Defendants deny the allegations in paragraph 5.

6. Defendants admit that the individual defendants were employed by the State, and all acted within the course and scope of their employment. Defendant CDCR denies that the State of California and San Quentin State Prison are proper defendants, and CDCR answers as the relevant agency. Except as expressly admitted, Defendants deny the factual allegations in paragraph 6.

---

[1] CDCR is the legal entity responsible for the allegations in this lawsuit, and therefore answers the complaint. CDCR was erroneously sued in the caption as "State of California; California Department of Corrections & Rehabilitation (CDCR), an agency of the State of California; San Quentin State Prison, a CDCR state prison".

2

Defs. CDCR, Diaz, Tharratt, Davis, Broomfield, Cryer, Pachynski, Garrigan's Answer to FACSAC (3:21-cv-06516)

7.     Defendants admit that CDCR is a department of the State of California.

8.     Defendants admit that San Quentin State Prison is a prison within the CDCR, but deny that San Quentin State Prison is a proper defendant because it is not a separate legal entity.

9.     Defendants admit that Defendant Ralph Diaz was employed as the acting Secretary and then confirmed Secretary for the CDCR from approximately September 1, 2018 through approximately October 1, 2020. Defendant Diaz further admits that he was the highest ranking CDCR policy-making official with respect to CDCR operations, except that the court-appointed Federal Receiver Clark Kelso was the highest-ranking policy-making official with respect to CDCR inmate-healthcare operations provided through the California Correctional Health Care Services (CCHCS).  Defendant Diaz further admits that he was personally involved in the decision to transfer the incarcerated persons who CCHCS had identified as medically high-risk individuals to be moved out of the California Institute for Men (CIM) which was experiencing a COVID-19 outbreak. Defendant Diaz admits that he acted within the course and scope of his employment as Secretary.  Except as expressly admitted, Defendants deny the factual allegations in paragraph 9, including based on insufficient information to determine the truth of the factual allegations.

10.     Defendants admit that Robert S. Tharratt, M.D., was the Director of Health Care Operations and Statewide Chief Medical Executive, California Correctional Health Care Services during the relevant period of March through June 2020, and, on information and belief, Dr. Tharratt is deceased since August 2020. Except as expressly admitted, Defendants deny the factual allegations in paragraph 10.

11.     Defendant Ronald Davis admits he worked as the Warden of San Quentin State Prison from 2015 until about February 2020, at which time his job changed to working in Sacramento as the CDCR's acting Associate Director, Reception Centers, through the remainder of 2020 and beyond.  Defendant Davis admits that he acted within the course and scope of his employment as acting Associate Director, during all relevant times.  Except as expressly admitted, Defendants deny the factual allegations of paragraph 11.

3

12.    Defendants admit that Defendant Ronald Broomfield was working as the Acting Warden of San Quentin State Prison from approximately February 2020 through the remainder of 2020 and beyond.  Defendant Broomfield admits that he acted within the course and scope of his employment as acting Warden, during all relevant times.  Except as expressly admitted, Defendants deny the factual allegations of paragraph 12.

13.    Defendants admit that Defendant Clarence Cryer was the Chief Executive Officer (CEO) of the CCHCS at San Quentin State Prison from approximately May 2020 until January 2021. Defendant Cryer admits that he acted within the course and scope of his employment as CEO, during that time period.  Except as expressly admitted, Defendants deny the factual allegations of paragraph 13.

14.    Defendants admit that Defendant ALISON PACHYNSKI, M.D., with a Master of Public Health, was a licensed physician and Board certified in internal medicine, and Chief Medical Executive of San Quentin State Prison from approximately September 2019 to the present. Defendant Dr. Pachynski admits that, at all material times, she was employed by the State of California, and acted within the course and scope of her employment.  Except as expressly admitted, Defendants deny the remainder of the allegations in paragraph 14.

15.    Defendants admit that Defendant SHANNON GARRIGAN, M.D., was a licensed physician and Board certified in family medicine, and Chief Physician and Surgeon of San Quentin State Prison from approximately December 2019 to the present. Defendant Dr. Garrigan admits that, at all material times, she was employed by the State of California, and acted within the course and scope of her employment. Except as expressly admitted, Defendants deny the remainder of the allegations in this paragraph 15.

16.    Defendants deny the factual allegations in paragraph 16, including based on lack of sufficient information to determine the truth of the allegations.

17.    Defendants deny the factual allegations in paragraph 17, including based on lack of sufficient information to determine the truth of the allegations.

18.    Defendants deny the factual allegations in paragraph 18, including based on lack of sufficient information to determine the truth of the allegations.

19.    Defendants deny the factual allegations in paragraph 19, including based on lack of sufficient information to determine the truth of the allegations.

20.    Defendants deny that Plaintiffs have properly sued the individual defendants in their individual capacities.

21.    Defendants deny all factual allegations in paragraph 21.

22.    Defendants deny all factual allegations in paragraph 22, including based on lack of sufficient information to determine the truth of the allegations.

23.    Many of the allegations in paragraph 23 are legal conclusions, but to the extent that any response is required, Defendants deny all factual allegations in paragraph 23.

24.    The allegation in paragraph 24 is a legal conclusion, but to the extent that any response is required, Defendants deny that the complaint is properly pled in the alternative.

### GENERAL ALLEGATIONS

25.    Defendants deny the factual allegations in paragraph 25.

26.    Defendants admit that Sergeant Polanco worked at San Quentin State Prison, and was about 55 years old at the time of his death.  Except as expressly admitted, Defendants deny the allegations in paragraph 26, including based on insufficient information to determine the truth of the factual allegations.

27.    Paragraph 27 contains conclusions of law as to which no response is required. Defendants deny they acted recklessly, with deliberate indifference, or with intent to create a danger to anyone, including Sergeant Polanco, and Defendants deny all factual allegations in paragraph 27.

28.    Defendants admit that in March 2020 Governor Newsom declared a State of Emergency relating to the COVID-19 pandemic. Defendants admit that many factors, some of which were unclear to some or all of them at the time of the transfer of medically high-risk persons from CIM to San Quentin, contributed to the spread of COVID-19 at San Quentin following the transfer, such as facility-related limitations if significant isolation/quarantining became necessary, uncertainty about transmissibility risks, and efforts to comply with federal court orders.  Defendants further admit many incarcerated patients have chronic illnesses.  Except

5

as expressly admitted, Defendants deny all factual allegations in paragraph 28, including because they lack sufficient information to determine the truth of the allegations.

29.    Defendants admit that the referenced March 2020 order is a public document that speaks for itself. Defendants deny the incomplete characterization of the order, which also contains legal conclusions to which no response is required.  Except as expressly admitted, Defendants deny the factual allegations in paragraph 29.

30.    Defendants admit to the existence of the referenced letter, but deny the incomplete characterization of the letter, which speaks for itself.  Defendants admit that as of March 18, 2020, there were no known cases of COVID-19-positive inmates or staff at San Quentin State Prison.  Except as expressly admitted, Defendants deny the remainder of the factual allegations in paragraph 30, including because they lack sufficient information to determine the truth of the allegations, which further are not relevant to Plaintiffs' claims.

31.    Defendants admit that Governor Newsome announced a shelter-in-place order in March 2020, but deny the incomplete characterization of that order, which speaks for itself, and which allegations are not relevant to Plaintiffs' claims.

32.    Defendants admit that in March 2020, Governor Newsome issued Executive Order N-36-20, but deny the incomplete characterization of that order, which speaks for itself. Except as expressly admitted, Defendants deny the remainder of the factual allegations in paragraph 32.

33.    Defendants deny the factual allegations in paragraph 33, including based on insufficient information to determine the truth of the allegations.

34.    Defendants admit they are unaware of any identified cases of COVID-19-infected incarcerated persons at San Quentin State Prison prior to the arrival of incarcerated persons transferred from the California Institution for Men (CIM) around May 30, 2020, but there were cases of San Quentin State Prison staff diagnosed with COVID-19 prior to that transfer, including since April of 2020. Defendant Diaz admits he was involved in the decision to transfer the CIM inmates to San Quentin, that the incarcerated persons who transferred from CIM reportedly were identified as having medical conditions making them high-risk and warranting their transfer out of CIM which was experiencing an outbreak of COVID-19, and the purpose of the transfer was to

6

move them out of too-full housing at CIM before they were exposed to COVID-19 to protect them. Defendants admit that those men transferred from CIM were promptly tested for COVID-19 after they arrived at San Quentin State Prison, and that records will show when the CIM transferees were tested prior to the transfer.  Except as expressly admitted, Defendants deny the remainder of the allegations in paragraph 34, including based on insufficient information to determine the truth of the factual allegations.

35.    Defendants admit that the incarcerated persons transferred from CIM were housed and cared for at San Quentin under difficult circumstances, particularly given the facilities available to quarantine approximately 120 CIM transferees after it was found that three of the transferees presented with signs and/or symptoms concerning for COVID-19 upon their being received at San Quentin (causing San Quentin CCHCS to immediately isolate them upon arrival and test them for COVID-19). Defendants further admit that all the transferred CIM inmates were screened upon their arrival to San Quentin, and San Quentin custody placed the non-symptomatic CIM inmates into the "Badger Unit" as the best remaining option under the circumstances, which was consistent with some public-health guidance at the time that COVID-19 was generally transmitted through contact with droplets (as opposed to aerosol transmission), and records show the spread of COVID-19 cases at San Quentin following the CIM transfer. Except as expressly admitted, Defendants deny the remainder of the allegations in paragraph 35, including based on lack of sufficient information to determine the truth of the allegations that are so ambiguous and overbroad.

36.    Defendant Diaz admits he was involved in the decision to transfer the CIM inmates to San Quentin, that the incarcerated persons who transferred from CIM reportedly were identified as having medical conditions making them high-risk and warranting their transfer out of CIM which was experiencing an outbreak of COVID-19, and that the transfer was intended to protect them by moving them out of too-full housing at CIM before they were exposed to COVID-19. Except as expressly admitted, Defendant Diaz denies all factual allegations in paragraph 36.  The remaining Defendants deny the factual allegations entirely, including based on lack of sufficient information to determine the truth of the allegations.

Defs. CDCR, Diaz, Tharratt, Davis, Broomfield, Cryer, Pachynski, Garrigan's Answer to FACSAC (3:21-cv-06516)

37.     Defendants deny all factual allegations in paragraph 37.

38.     Defendant Dr. Garrigan admits she had conversations with Dr. Willis in the beginning of June, at which Dr. Willis recommended many public health safety measures be taken at San Quentin, and that he recommended an incident command be established.  Defendants admit that the incident command was established about July 3, 2025.  Except as expressly admitted, Defendants deny all factual allegations in paragraph 38, including based on having insufficient information on which to determine the truth of the allegations.

39.     Defendants admit that certain health care providers toured San Quentin State Prison around June 13, 2020 with Dr. Pachynski, and produced a memorandum dated about June 15, which should be viewed in whole, and speaks for itself.  Except as expressly admitted, Defendants deny the factual allegations in paragraph 39, including based on having insufficient information on which to determine the truth of the allegations.

40.     Defendants deny the factual allegations in paragraph 40, including based on having insufficient information on which to determine the truth of the allegations.

41.     Defendants deny the factual allegations in paragraph 41.

42.     Paragraph 42 contains conclusions of law to which no response is required. Defendants admit they worked with third parties to improve COVID-19 testing at San Quentin State Prison, and Defendants did not reject assistance.  Further, PPE was available and provided to staff at San Quentin State Prison, consistent with the then-current understanding of the need for PPE and how PPE could properly be employed to reduce the spread of COVID-19 infections. Defendants admit that Kelso's testimony is a matter of public record, but deny the incomplete characterization of his testimony.  Except as expressly admitted, Defendants deny the remainder of the factual allegations in paragraph 42.

43.     Defendants deny the factual allegations in paragraph 43.

44.     Defendants deny the factual allegations in paragraph 44.

45.     Defendants deny the factual allegations in paragraph 44, including based on having insufficient information on which to determine the truth of the allegations.

46.    Defendant Diaz admits that his resignation was announced in late August 2020 and he retired from CDCR effective October 2020.  Except as expressly admitted, Defendants deny the allegations in paragraph 46.

47.    Defendants admit the California Court of Appeal issued an opinion, *In re Von Staich*, which opinion speaks for itself.  Except as expressly admitted, Defendants deny the incomplete characterization of that opinion and all factual allegations in paragraph 47, which are not relevant to Plaintiffs' claims.

48.    Defendants admit that the Office of Inspector General issued reports regarding COVID-19, which reports speak for themselves.  Except as expressly admitted, Defendants deny the incomplete characterization of the report and factual allegations in paragraph 48.

49.    Defendants admit that the Office of Inspector General issued reports regarding COVID-19, which reports speak for themselves.  Except as expressly admitted, Defendants deny the incomplete characterization of the report and factual allegations in paragraph 49.

50.    Defendants admit that the Office of Inspector General issued reports regarding COVID-19 and the referenced letter, which documents speak for themselves.  Except as expressly admitted, Defendants deny the incomplete characterizations and factual allegations in paragraph 50.

51.    Defendants admit that the Office of Inspector General issued the report regarding COVID-19, which document speaks for itself.  Except as expressly admitted, Defendants deny the incomplete characterization and factual allegations in paragraph 51.

52.    Defendants admit that Cal-OSHA issued citations in 2021 relating to COVID-19, which citations are public documents and speak for themselves.  Except as expressly admitted, Defendants deny the incomplete characterization and factual allegations in paragraph 52.

53.    Defendants deny all factual allegations in paragraph 53.

54.    Defendants deny all factual allegations in paragraph 54, including based on insufficient information to determine the truth of those allegations.

55.    Defendants admit there were staffing shortages at times during the COVID-19 pandemic. Except as expressly admitted, Defendants deny the factual allegations of paragraph 55, including based on insufficient information to determine the truth of the factual allegations.

56.    Defendants admit that, when medically necessary, inmates sick with COVID-19 were transported to hospitals outside San Quentin State Prison during the relevant time period of June 2020.  Except as expressly admitted, Defendants deny the factual allegations of paragraph 56.

57.    Defendants deny the factual allegations of paragraph 57, because Defendants lack sufficient information to form an opinion as to the truth of the factual allegations.

58.    Defendants deny the factual allegations of paragraph 58, because Defendants lack sufficient information to form an opinion as to the truth of the factual allegations.

59.    Defendants deny the factual allegations of paragraph 59, because Defendants lack sufficient information to form an opinion as to the truth of the factual allegations.

60.    Defendants deny the factual allegations of paragraph 60, because Defendants lack sufficient information to form an opinion as to the truth of the factual allegations.

61.    Defendants deny the factual allegations of paragraph 61, including based on lacking sufficient information to form an opinion as to the truth of the factual allegations relating to alleged statements made after Sergeant Polanco's death.

62.    Defendants deny the factual allegations of paragraph 62.

63.    Defendants deny the factual allegations of paragraph 63.

64.    Defendants deny the factual allegations of paragraph 64.

CAUSES OF ACTION

FIRST CAUSE OF ACTION (42 U.S.C. § 1983)

PLAINTIFFS AGAINST DEFENDANTS DIAZ, TINA THARRATT sued as Personal Representative of the ESTATE OF THARRATT, DAVIS, BROOMFIELD, CRYER, PACHYNSKI AND GARRIGAN

65.    Defendants incorporate by reference their prior responses to paragraphs 1 to 64 as if fully set forth here.

66.    Defendants deny the allegations of paragraph 66.

10

67. Defendants deny the allegations of paragraph 67.

68. Defendants deny the allegations of paragraph 68.

69. Defendants deny the allegations of paragraph 69.

70. Defendants deny the allegations of paragraph 70.

71. Defendants deny the allegations of paragraph 71.

72. Defendants deny the allegations of paragraph 72.

73. Defendants deny the allegations of paragraph 73.

74. Defendants deny the allegations of paragraph 74.

SECOND CAUSE OF ACTION (42 U.S.C. § 1983 – Supervisor Liability)

PLAINTIFFS AGAINST DEFENDANTS DIAZ, TINA THARRATT sued as Personal Representative of the ESTATE OF THARRATT, DAVIS, BROOMFIELD, CRYER, PACHYNSKI AND GARRIGAN

75. Defendants incorporate by reference their prior responses to paragraphs 1 to 74 as if fully set forth here.

76. Defendants deny the allegations of paragraph 76.

77. Defendants deny the allegations of paragraph 77.

78. Defendants deny the allegations of paragraph 78.

79. Defendants deny the allegations of paragraph 79.

80. Defendants deny the allegations of paragraph 80.

81. Defendants deny the allegations of paragraph 81.

82. Defendants admit THE THIRD CAUSE OF ACTION, in the superseded First Amended Complaint at PARAGRAPHS 82 TO 87, HAS BEEN DISMISSED BY THE COURT.

FOURTH CAUSE OF ACTION

(VIOLATION OF REHABILITATION ACT, 29 U.S.C. § 794)

PLAINTIFFS AGAINST DEFENDANT CDCR

8883. Defendants incorporate by reference their prior responses to paragraphs 1 to 81 as if fully set forth here.

11

Defs. CDCR, Diaz, Tharratt, Davis, Broomfield, Cryer, Pachynski, Garrigan's Answer to FACSAC (3:21-cv-06516)

8984. Defendant CDCR admits that 28 U.S.C. section 701(a) is a statute, the content of which speaks for itself.

9085. Defendant CDCR admits that 29 U.S.C. section 794(b) is a statute, the content of which speaks for itself.

9186. Defendant CDCR admits that it receives federal funds.  Except as expressly admitted, CDCR denies the allegations in paragraph 9186.

9287. Defendant CDCR denies the allegations in paragraph 9287.

9388. Defendant CDCR denies the allegations in paragraph 9388.

9489. Defendant CDCR denies the allegations in paragraph 9489.

9590. Defendant CDCR denies the allegations in paragraph 9590.

9691. Defendant CDCR denies the allegations in paragraph 9691.

92.    Defendants admit the THE FIFTH CAUSE OF ACTION HAS BEEN DISMISSED BY THE COURT.

## PLAINTIFFS' REQUEST FOR RELIEF

Defendants deny that Plaintiffs are entitled to any relief in this action.

## DEFENDANTS' AFFIRMATIVE DEFENSES

1.    Defendants assert that because the First Second Amended Complaint (complaint) is framed in both conclusory and vague and ambiguous terms, Defendants cannot anticipate all affirmative defenses and separate matters that may be applicable in this action.  Defendants reserve the right to raise additional affirmative defenses if they are subsequently determined to be applicable based on subsequent investigation or discovery in this action.

2.    Defendants assert that all Plaintiffs' claims, separately and conjunctively, fail because each individual Defendant asserts that he, she or it is entitled to qualified immunity for all actions and omissions that occurred in relation to Plaintiffs' claims (challenged conduct), because the challenged conduct did not violate clearly established law as it existed at the relevant

12

times.  It was not clear to every reasonable official under the circumstances at the relevant times that the challenged conduct of each individual Defendant and deceased individual Dr. Tharratt would violate the rights of Sergeant Polanco or any of the other Plaintiffs.

3.    Defendants assert that all Plaintiffs' claims, separately and conjunctively, fail because those claims arose from, related to, or were caused by the administration and use of covered countermeasures (e.g., decisions on how to provide masks and PPE to staff) during the course of a public health emergency declared by the United States, and thus all their alleged acts and challenged conduct are protected and immune from civil suit and liability as set forth in the Public Readiness and Emergency Preparedness Act (PREP Act), at 42 U.S.C. section 247d-6d.

4.    Defendants assert they are not vicariously liable for any act or omission of any other person, by way of vicarious liability, supervisor liability, respondeat superior, or otherwise.

5.    Defendants assert that Plaintiffs lack standing, including to bring claims that belonged to decedent, Sergeant Polanco.

6.    Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred because the risk of contracting COVID-19 working inside a prison during the COVID-19 pandemic was an inherent risk that Sergeant Polanco knowingly assumed by choosing to continue working his job at San Quentin State Prison during May and June 2020.

7.    [Intentionally blank.] ~~Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred by the doctrines of laches, estoppel, waiver and unclean hands, including because (1) Sergeant Polanco reportedly failed to consistently wear a mask as a precaution to reduce his risks of contracting COVID-19 when he was working inside San Quentin State Prison in and around June 2020, and (2) Sergeant Polanco failed to use available PPE, including masks, that was provided/accessible to custody staff tasked with accompanying COVID-19-infected incarcerated persons who were being transported from San Quentin to outside medical treatment.~~

8.    [Intentionally blank.] ~~Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred because Sergeant Polanco unreasonably failed to take advantage of preventative measures provided by CDCR or to otherwise avoid the alleged harm, including~~

13

because (1) Sergeant Polanco reportedly failed to consistently wear a mask as a precaution to reduce his risks of contracting COVID-19 when he was working inside San Quentin State Prison in and around June 2020, and (2) Sergeant Polanco failed to use available PPE, including masks, that was provided/accessible to custody staff tasked with accompanying COVID-19-infected incarcerated persons who were being transported from San Quentin to outside medical treatment.

9.    Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred because Respondent's actions were required by law, such as taking action to properly care for medically high-risk incarcerated persons (and to care for incarcerated persons in general) during the COVID-19 pandemic, consistent with the then-current understandings of how COVID-19 was transmitted and how to manage COVID-19 in prison settings.

10.    Defendants assert the facts show that Plaintiffs fail to state any valid claim for relief, including for lack of causation.

11.    Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred because at all relevant times the Defendants' respective actions were taken in good faith and were lawful exercises of official discretion in managing COVID-19 inside prisons during a pandemic, and their respective actions were among the rationale options from which officials chose, without malice, deliberate indifference, gross negligence or recklessness to Plaintiffs' rights, and Defendants were motivated by legitimate, nondiscriminatory reasons, and by business and operational necessity.

12.    Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred or reduced by Plaintiffs' failures and the doctrines of comparative fault, contributory negligence, and mitigation of damages.

13.    Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred by immunity because the decision to transfer the CIM inmates to San Quentin State Prison and the subsequent decisions in managing the healthcare of inmates at San Quentin State Prison were all decisions taken with the approval of the Federal Receiver and federal District Court overseeing the case in which the Federal Receiver was appointed to oversee the healthcare provided to inmates within CDCR.

14

Defs. CDCR, Diaz, Tharratt, Davis, Broomfield, Cryer, Pachynski, Garrigan's Answer to FACSAC (3:21-cv-06516)

14.   Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred by estoppel, including judicial estoppel, to the extent that Plaintiffs have made statements relied upon in decisions made in other administrative or judicial forums.

15.   Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred because Sergeant Polanco consented to the conduct alleged in this action, including because he was informed of the risks of COVID-19 infection working inside San Quentin State Prison both before and after the transfer of inmates from CIM, and PPE limitations at San Quentin, and yet he voluntarily chose to continue working under those conditions.

16.   Defendants assert that all Plaintiffs' claims, both separately and conjunctively, fail because Plaintiffs have failed to join necessary and indispensable parties, including the Federal Receiver.

17.   Defendants assert that all Plaintiffs' claims, both separately and conjunctively, fail because Defendants are immune from liability under Cal. Government Code sections 810 et seq., including but not limited to sections 820.2, 820.4, 820.6, 820.8, 821 and 821.4, and immunity for discretionary decisions made by public officials, including under sections 815.2, and section 815.6 (mandatory duties).

18.   Defendants assert that they are not liable for injuries caused by others, including under Cal. Government Code sections 815.2, 820.2.

19.   Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred by the Eleventh Amendment to the United States Constitution.

20.   Defendant CDCR asserts the Rehabilitation Act cause of action fails because the risk of contracting COVID-19 working inside a prison during the COVID-19 pandemic was an inherent risk and essential function of Sergeant Polanco's job working for CDCR.

21.   Defendant CDCR asserts the Rehabilitation Act cause of action fails because Sergeant Polanco did not request any workplace accommodation, and no need for accommodation was apparent.

22.   Defendant CDCR asserts the Rehabilitation Act cause of action fails because Sergeant Polanco fails to allege, and cannot prove, facts showing that he was discriminated

15

against because of his alleged disability or medical conditions, but instead the Plaintiffs allege that Sergeant Polanco was seeking preferential treatment at work on account of his alleged disability or medical conditions.

23. Defendant CDCR asserts that the Rehabilitation Act cause of action fails because Sergeant Polanco failed to adequately engage in the interactive process to identify his medical limitations that he contends required workplace accommodation by CDCR.

24. Defendants assert they had no constitutional duty to not increase CDCR custody employees' risks of COVID-19 infection during a pandemic because that risk is inherent to CDCR employees working with inmates during a pandemic. There is a medical center at San Quentin, and the introduction of inmates who have been exposed to, or confirmed to have, infectious diseases such as COVID-19 must continue to occur as part of normal operations, using procedures established by healthcare professionals responsible to determine inmate healthcare matters, and any increased attendant risk of infection to staff who must work around this hazard may be addressed through available PPE. Further, COVID-19 was in the community at large (and is now endemic), as it is now known to be transmissible by asymptomatic infected persons who would have spread it to San Quentin, and the risk of contracting COVID-19 at San Quentin was unavoidable, and subject to change at any time. Working around potentially infectious inmates such that contracting disease is possible was a known risk for custody employees during COVID-19 because they knowingly worked around incarcerated persons during a pandemic, including when transporting incarcerated patients for COVID-19 medical care. Disclosure of the transmission of COVID-19 and exposure risks at San Quentin were repeatedly made to San Quentin staff during May and June 2020, including Sergeant Polanco. Finally, Defendant CDCR provided PPE as available and consistent with then-current understanding of COVID-19 transmission, such that Defendants did not violate Plaintiffs' rights.

25. Defendants allege a defense of offset, including as against Plaintiffs' alleged losses for any negligence-based claims, and/or collateral source payments to Plaintiffs.

**DEFENDANTS' DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF**

16

1. Defendants demand a jury trial to the extent provided by law.

2. Defendants pray for judgment as follows:

   a. That judgment be given in favor of Defendants and against Plaintiffs.

   b. That Plaintiffs take nothing by this action;

   c. That Defendants be awarded costs of suit and attorney's fees, as provided by law;

   d. That Defendants be awarded such other relief as the Court deems fair and proper.


Dated:  ~~January 31~~March 20, 202~~5~~6                    Respectfully submitted,

ROB BONTA
Attorney General of California
FIEL D. TIGNO
Supervising Deputy Attorney General
EDWARD GARCIA, JR.,
Deputy Attorney General


JOSHUA C. IRWIN
Deputy Attorney General
*Attorneys for Defendants CDCR, Diaz,*
*Tharratt, Davis, Broomfield, Cryer,*
*Pachynski, and Garrigan*

OK2021900270
91950261.docx

17

Defs. CDCR, Diaz, Tharratt, Davis, Broomfield, Cryer, Pachynski, Garrigan's Answer to ~~FAC~~SAC (3:21-cv-06516)

# EXHIBIT B

ROB BONTA
Attorney General of California
FIEL D. TIGNO
Supervising Deputy Attorney General
EDWARD GARCIA, JR.,
Deputy Attorney General
State Bar No. 173487
JOSHUA C. IRWIN
Deputy Attorney General
State Bar No. 209437
 1515 Clay Street, 20th Floor, P.O. Box 70550
 Oakland, CA  94612-0550
 Telephone:  (510) 879-0278
 E-mail:  Joshua.Irwin@doj.ca.gov;
 Edward.Garcia@doj.ca.gov
*Attorneys for Defendants CDCR, Diaz, Tharratt,*
*Davis, Broomfield, Cryer, Pachynski & Garrigan*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GILBERT POLANCO, Deceased, by and through his Co-Successors in Interest, PATRICIA POLANCO, VINCENT POLANCO, and SELENA POLANCO, as Co-Successors in Interest and Individually,**<br><br>Plaintiffs,<br><br>v.<br><br>**STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR) et al.;**<br><br>Defendants. | 3:21-cv-06516<br><br>**AMENDED ANSWER OF DEFENDANTS CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, RALPH DIAZ, TINA THARRATT, RONALD DAVIS, RONALD BROOMFIELD, CLARENCE CRYER, DR. ALISON PACHYNSKI, AND DR. SHANNON GARRIGAN TO PLAINTIFFS' SECOND AMENDED COMPLAINT;**<br><br>**DEMAND FOR A JURY TRIAL**<br><br>Date:<br>Time:<br>Courtroom:<br>Judge:    The Honorable Charles R. Breyer<br>Trial Date:<br>Action Filed: August 24, 2021 |

Defendants the California Department of Corrections & Rehabilitation (CDCR[1]), Ralph Diaz, Tina Tharratt (sued as alleged personal representative of the Estate of Robert S. Tharratt), Ronald Davis, Ronald Broomfield, Clarence Cryer, Alison Pachynski, M.D., and Shannon Garrigan, M.D. (Defendants) answer Plaintiffs' Second Amended Complaint (Document 80) and deny, admit, and allege, as follows:

### JURISDICTION

1.    Defendants admit that Plaintiffs have filed an action alleging violation of the Constitution and Rehabilitation Act, brought pursuant to 42 U.S.C. section 1983.  Defendants admit jurisdiction of the United State District Court for the Northen District of California.  Except as expressly admitted, Defendants deny the other factual allegations in paragraph 1.

2.    Defendants admit that venue is proper in this judicial district.

### INTRADISTRICT ASSIGNMENT

3.    Defendants admit the matter is properly assigned to the San Francisco Division.

### PARTIES AND PROCEDURE

4.    Defendants admit that Plaintiff Gilbert Polanco (Sergeant Polanco) is deceased. Many of the allegations are legal conclusions, but to the extent that any response is required, Defendants deny the allegations in paragraph 4. Except as expressly admitted, Defendants deny the factual allegations in paragraph 4, including based on lack of sufficient information to determine the truth of the allegations.

5.    Defendants deny the allegations in paragraph 5.

6.    Defendants admit that the individual defendants were employed by the State, and all acted within the course and scope of their employment. Defendant CDCR denies that the State of California and San Quentin State Prison are proper defendants, and CDCR answers as the relevant agency. Except as expressly admitted, Defendants deny the factual allegations in paragraph 6.

_____

[1] CDCR is the legal entity responsible for the allegations in this lawsuit, and therefore answers the complaint. CDCR was erroneously sued in the caption as "State of California; California Department of Corrections & Rehabilitation (CDCR), an agency of the State of California; San Quentin State Prison, a CDCR state prison".

7.   Defendants admit that CDCR is a department of the State of California.

8.   Defendants admit that San Quentin State Prison is a prison within the CDCR, but deny that San Quentin State Prison is a proper defendant because it is not a separate legal entity.

9.   Defendants admit that Defendant Ralph Diaz was employed as the acting Secretary and then confirmed Secretary for the CDCR from approximately September 1, 2018 through approximately October 1, 2020. Defendant Diaz further admits that he was the highest ranking CDCR policy-making official with respect to CDCR operations, except that the court-appointed Federal Receiver Clark Kelso was the highest-ranking policy-making official with respect to CDCR inmate-healthcare operations provided through the California Correctional Health Care Services (CCHCS).  Defendant Diaz further admits that he was personally involved in the decision to transfer the incarcerated persons who CCHCS had identified as medically high-risk individuals to be moved out of the California Institute for Men (CIM) which was experiencing a COVID-19 outbreak. Defendant Diaz admits that he acted within the course and scope of his employment as Secretary.  Except as expressly admitted, Defendants deny the factual allegations in paragraph 9, including based on insufficient information to determine the truth of the factual allegations.

10.  Defendants admit that Robert S. Tharratt, M.D., was the Director of Health Care Operations and Statewide Chief Medical Executive, California Correctional Health Care Services during the relevant period of March through June 2020, and, on information and belief, Dr. Tharratt is deceased since August 2020. Except as expressly admitted, Defendants deny the factual allegations in paragraph 10.

11.  Defendant Ronald Davis admits he worked as the Warden of San Quentin State Prison from 2015 until about February 2020, at which time his job changed to working in Sacramento as the CDCR's acting Associate Director, Reception Centers, through the remainder of 2020 and beyond.  Defendant Davis admits that he acted within the course and scope of his employment as acting Associate Director, during all relevant times.  Except as expressly admitted, Defendants deny the factual allegations of paragraph 11.

3

12. Defendants admit that Defendant Ronald Broomfield was working as the Acting Warden of San Quentin State Prison from approximately February 2020 through the remainder of 2020 and beyond. Defendant Broomfield admits that he acted within the course and scope of his employment as acting Warden, during all relevant times. Except as expressly admitted, Defendants deny the factual allegations of paragraph 12.

13. Defendants admit that Defendant Clarence Cryer was the Chief Executive Officer (CEO) of the CCHCS at San Quentin State Prison from approximately May 2020 until January 2021. Defendant Cryer admits that he acted within the course and scope of his employment as CEO, during that time period. Except as expressly admitted, Defendants deny the factual allegations of paragraph 13.

14. Defendants admit that Defendant ALISON PACHYNSKI, M.D., with a Master of Public Health, was a licensed physician and Board certified in internal medicine, and Chief Medical Executive of San Quentin State Prison from approximately September 2019 to the present. Defendant Dr. Pachynski admits that, at all material times, she was employed by the State of California, and acted within the course and scope of her employment. Except as expressly admitted, Defendants deny the remainder of the allegations in paragraph 14.

15. Defendants admit that Defendant SHANNON GARRIGAN, M.D., was a licensed physician and Board certified in family medicine, and Chief Physician and Surgeon of San Quentin State Prison from approximately December 2019 to the present. Defendant Dr. Garrigan admits that, at all material times, she was employed by the State of California, and acted within the course and scope of her employment. Except as expressly admitted, Defendants deny the remainder of the allegations in this paragraph 15.

16. Defendants deny the factual allegations in paragraph 16, including based on lack of sufficient information to determine the truth of the allegations.

17. Defendants deny the factual allegations in paragraph 17, including based on lack of sufficient information to determine the truth of the allegations.

18. Defendants deny the factual allegations in paragraph 18, including based on lack of sufficient information to determine the truth of the allegations.

4

19. Defendants deny the factual allegations in paragraph 19, including based on lack of sufficient information to determine the truth of the allegations.

20. Defendants deny that Plaintiffs have properly sued the individual defendants in their individual capacities.

21. Defendants deny all factual allegations in paragraph 21.

22. Defendants deny all factual allegations in paragraph 22, including based on lack of sufficient information to determine the truth of the allegations.

23. Many of the allegations in paragraph 23 are legal conclusions, but to the extent that any response is required, Defendants deny all factual allegations in paragraph 23.

24. The allegation in paragraph 24 is a legal conclusion, but to the extent that any response is required, Defendants deny that the complaint is properly pled in the alternative.

## GENERAL ALLEGATIONS

25. Defendants deny the factual allegations in paragraph 25.

26. Defendants admit that Sergeant Polanco worked at San Quentin State Prison, and was about 55 years old at the time of his death. Except as expressly admitted, Defendants deny the allegations in paragraph 26, including based on insufficient information to determine the truth of the factual allegations.

27. Paragraph 27 contains conclusions of law as to which no response is required. Defendants deny they acted recklessly, with deliberate indifference, or with intent to create a danger to anyone, including Sergeant Polanco, and Defendants deny all factual allegations in paragraph 27.

28. Defendants admit that in March 2020 Governor Newsom declared a State of Emergency relating to the COVID-19 pandemic. Defendants admit that many factors, some of which were unclear to some or all of them at the time of the transfer of medically high-risk persons from CIM to San Quentin, contributed to the spread of COVID-19 at San Quentin following the transfer, such as facility-related limitations if significant isolation/quarantining became necessary, uncertainty about transmissibility risks, and efforts to comply with federal court orders. Defendants further admit many incarcerated patients have chronic illnesses. Except

as expressly admitted, Defendants deny all factual allegations in paragraph 28, including because they lack sufficient information to determine the truth of the allegations.

29.    Defendants admit that the referenced March 2020 order is a public document that speaks for itself. Defendants deny the incomplete characterization of the order, which also contains legal conclusions to which no response is required.  Except as expressly admitted, Defendants deny the factual allegations in paragraph 29.

30.    Defendants admit to the existence of the referenced letter, but deny the incomplete characterization of the letter, which speaks for itself.  Defendants admit that as of March 18, 2020, there were no known cases of COVID-19-positive inmates or staff at San Quentin State Prison.  Except as expressly admitted, Defendants deny the remainder of the factual allegations in paragraph 30, including because they lack sufficient information to determine the truth of the allegations, which further are not relevant to Plaintiffs' claims.

31.    Defendants admit that Governor Newsome announced a shelter-in-place order in March 2020, but deny the incomplete characterization of that order, which speaks for itself, and which allegations are not relevant to Plaintiffs' claims.

32.    Defendants admit that in March 2020, Governor Newsome issued Executive Order N-36-20, but deny the incomplete characterization of that order, which speaks for itself. Except as expressly admitted, Defendants deny the remainder of the factual allegations in paragraph 32.

33.    Defendants deny the factual allegations in paragraph 33, including based on insufficient information to determine the truth of the allegations.

34.    Defendants admit they are unaware of any identified cases of COVID-19-infected incarcerated persons at San Quentin State Prison prior to the arrival of incarcerated persons transferred from the California Institution for Men (CIM) around May 30, 2020, but there were cases of San Quentin State Prison staff diagnosed with COVID-19 prior to that transfer, including since April of 2020. Defendant Diaz admits he was involved in the decision to transfer the CIM inmates to San Quentin, that the incarcerated persons who transferred from CIM reportedly were identified as having medical conditions making them high-risk and warranting their transfer out of CIM which was experiencing an outbreak of COVID-19, and the purpose of the transfer was to

6

move them out of too-full housing at CIM before they were exposed to COVID-19 to protect them. Defendants admit that those men transferred from CIM were promptly tested for COVID-19 after they arrived at San Quentin State Prison, and that records will show when the CIM transferees were tested prior to the transfer.  Except as expressly admitted, Defendants deny the remainder of the allegations in paragraph 34, including based on insufficient information to determine the truth of the factual allegations.

35.     Defendants admit that the incarcerated persons transferred from CIM were housed and cared for at San Quentin under difficult circumstances, particularly given the facilities available to quarantine approximately 120 CIM transferees after it was found that three of the transferees presented with signs and/or symptoms concerning for COVID-19 upon their being received at San Quentin (causing San Quentin CCHCS to immediately isolate them upon arrival and test them for COVID-19). Defendants further admit that all the transferred CIM inmates were screened upon their arrival to San Quentin, and San Quentin custody placed the non-symptomatic CIM inmates into the "Badger Unit" as the best remaining option under the circumstances, which was consistent with some public-health guidance at the time that COVID-19 was generally transmitted through contact with droplets (as opposed to aerosol transmission), and records show the spread of COVID-19 cases at San Quentin following the CIM transfer. Except as expressly admitted, Defendants deny the remainder of the allegations in paragraph 35, including based on lack of sufficient information to determine the truth of the allegations that are so ambiguous and overbroad.

36.     Defendant Diaz admits he was involved in the decision to transfer the CIM inmates to San Quentin, that the incarcerated persons who transferred from CIM reportedly were identified as having medical conditions making them high-risk and warranting their transfer out of CIM which was experiencing an outbreak of COVID-19, and that the transfer was intended to protect them by moving them out of too-full housing at CIM before they were exposed to COVID-19. Except as expressly admitted, Defendant Diaz denies all factual allegations in paragraph 36.  The remaining Defendants deny the factual allegations entirely, including based on lack of sufficient information to determine the truth of the allegations.

7

37.    Defendants deny all factual allegations in paragraph 37.

38.    Defendant Dr. Garrigan admits she had conversations with Dr. Willis in the beginning of June, at which Dr. Willis recommended many public health safety measures be taken at San Quentin, and that he recommended an incident command be established.  Defendants admit that the incident command was established about July 3, 2025.  Except as expressly admitted, Defendants deny all factual allegations in paragraph 38, including based on having insufficient information on which to determine the truth of the allegations.

39.    Defendants admit that certain health care providers toured San Quentin State Prison around June 13, 2020 with Dr. Pachynski, and produced a memorandum dated about June 15, which should be viewed in whole, and speaks for itself.  Except as expressly admitted, Defendants deny the factual allegations in paragraph 39, including based on having insufficient information on which to determine the truth of the allegations.

40.    Defendants deny the factual allegations in paragraph 40, including based on having insufficient information on which to determine the truth of the allegations.

41.    Defendants deny the factual allegations in paragraph 41.

42.    Paragraph 42 contains conclusions of law to which no response is required. Defendants admit they worked with third parties to improve COVID-19 testing at San Quentin State Prison, and Defendants did not reject assistance.  Further, PPE was available and provided to staff at San Quentin State Prison, consistent with the then-current understanding of the need for PPE and how PPE could properly be employed to reduce the spread of COVID-19 infections. Defendants admit that Kelso's testimony is a matter of public record, but deny the incomplete characterization of his testimony.  Except as expressly admitted, Defendants deny the remainder of the factual allegations in paragraph 42.

43.    Defendants deny the factual allegations in paragraph 43.

44.    Defendants deny the factual allegations in paragraph 44.

45.    Defendants deny the factual allegations in paragraph 44, including based on having insufficient information on which to determine the truth of the allegations.

46.    Defendant Diaz admits that his resignation was announced in late August 2020 and he retired from CDCR effective October 2020.  Except as expressly admitted, Defendants deny the allegations in paragraph 46.

47.    Defendants admit the California Court of Appeal issued an opinion, *In re Von Staich*, which opinion speaks for itself.  Except as expressly admitted, Defendants deny the incomplete characterization of that opinion and all factual allegations in paragraph 47, which are not relevant to Plaintiffs' claims.

48.    Defendants admit that the Office of Inspector General issued reports regarding COVID-19, which reports speak for themselves.  Except as expressly admitted, Defendants deny the incomplete characterization of the report and factual allegations in paragraph 48.

49.    Defendants admit that the Office of Inspector General issued reports regarding COVID-19, which reports speak for themselves.  Except as expressly admitted, Defendants deny the incomplete characterization of the report and factual allegations in paragraph 49.

50.    Defendants admit that the Office of Inspector General issued reports regarding COVID-19 and the referenced letter, which documents speak for themselves.  Except as expressly admitted, Defendants deny the incomplete characterizations and factual allegations in paragraph 50.

51.    Defendants admit that the Office of Inspector General issued the report regarding COVID-19, which document speaks for itself.  Except as expressly admitted, Defendants deny the incomplete characterization and factual allegations in paragraph 51.

52.    Defendants admit that Cal-OSHA issued citations in 2021 relating to COVID-19, which citations are public documents and speak for themselves.  Except as expressly admitted, Defendants deny the incomplete characterization and factual allegations in paragraph 52.

53.    Defendants deny all factual allegations in paragraph 53.

54.    Defendants deny all factual allegations in paragraph 54, including based on insufficient information to determine the truth of those allegations.

55. Defendants admit there were staffing shortages at times during the COVID-19 pandemic. Except as expressly admitted, Defendants deny the factual allegations of paragraph 55, including based on insufficient information to determine the truth of the factual allegations.

56. Defendants admit that, when medically necessary, inmates sick with COVID-19 were transported to hospitals outside San Quentin State Prison during the relevant time period of June 2020.  Except as expressly admitted, Defendants deny the factual allegations of paragraph 56.

57. Defendants deny the factual allegations of paragraph 57, because Defendants lack sufficient information to form an opinion as to the truth of the factual allegations.

58. Defendants deny the factual allegations of paragraph 58, because Defendants lack sufficient information to form an opinion as to the truth of the factual allegations.

59. Defendants deny the factual allegations of paragraph 59, because Defendants lack sufficient information to form an opinion as to the truth of the factual allegations.

60. Defendants deny the factual allegations of paragraph 60, because Defendants lack sufficient information to form an opinion as to the truth of the factual allegations.

61. Defendants deny the factual allegations of paragraph 61, including based on lacking sufficient information to form an opinion as to the truth of the factual allegations relating to alleged statements made after Sergeant Polanco's death.

62. Defendants deny the factual allegations of paragraph 62.

63. Defendants deny the factual allegations of paragraph 63.

64. Defendants deny the factual allegations of paragraph 64.

CAUSES OF ACTION

FIRST CAUSE OF ACTION (42 U.S.C. § 1983)

PLAINTIFFS AGAINST DEFENDANTS DIAZ, TINA THARRATT sued as Personal Representative of the ESTATE OF THARRATT, DAVIS, BROOMFIELD, CRYER, PACHYNSKI AND GARRIGAN

65. Defendants incorporate by reference their prior responses to paragraphs 1 to 64 as if fully set forth here.

66. Defendants deny the allegations of paragraph 66.

10

67.    Defendants deny the allegations of paragraph 67.

68.    Defendants deny the allegations of paragraph 68.

69.    Defendants deny the allegations of paragraph 69.

70.    Defendants deny the allegations of paragraph 70.

71.    Defendants deny the allegations of paragraph 71.

72.    Defendants deny the allegations of paragraph 72.

73.    Defendants deny the allegations of paragraph 73.

74.    Defendants deny the allegations of paragraph 74.

SECOND CAUSE OF ACTION (42 U.S.C. § 1983 – Supervisor Liability)

PLAINTIFFS AGAINST DEFENDANTS DIAZ, TINA THARRATT sued as Personal

Representative of the ESTATE OF THARRATT, DAVIS, BROOMFIELD, CRYER,

PACHYNSKI AND GARRIGAN

75.    Defendants incorporate by reference their prior responses to paragraphs 1 to 74 as if fully set forth here.

76.    Defendants deny the allegations of paragraph 76.

77.    Defendants deny the allegations of paragraph 77.

78.    Defendants deny the allegations of paragraph 78.

79.    Defendants deny the allegations of paragraph 79.

80.    Defendants deny the allegations of paragraph 80.

81.    Defendants deny the allegations of paragraph 81.

82.    Defendants admit THE THIRD CAUSE OF ACTION, in the superseded First Amended Complaint at PARAGRAPHS 82 TO 87, HAS BEEN DISMISSED BY THE COURT.

FOURTH CAUSE OF ACTION

(VIOLATION OF REHABILITATION ACT, 29 U.S.C. § 794)

PLAINTIFFS AGAINST DEFENDANT CDCR

83.    Defendants incorporate by reference their prior responses to paragraphs 1 to 81 as if fully set forth here.

11

Defs. CDCR, Diaz, Tharratt, Davis, Broomfield, Cryer, Pachynski, Garrigan's Answer to SAC (3:21-cv-06516)

84.    Defendant CDCR admits that 28 U.S.C. section 701(a) is a statute, the content of which speaks for itself.

85.    Defendant CDCR admits that 29 U.S.C. section 794(b) is a statute, the content of which speaks for itself.

86.    Defendant CDCR admits that it receives federal funds.  Except as expressly admitted, CDCR denies the allegations in paragraph 86.

87.    Defendant CDCR denies the allegations in paragraph 87.

88.    Defendant CDCR denies the allegations in paragraph 88.

89.    Defendant CDCR denies the allegations in paragraph 89.

90.    Defendant CDCR denies the allegations in paragraph 90.

91.    Defendant CDCR denies the allegations in paragraph 91.

92.    Defendants admit the THE FIFTH CAUSE OF ACTION HAS BEEN DISMISSED BY THE COURT.

PLAINTIFFS' REQUEST FOR RELIEF

Defendants deny that Plaintiffs are entitled to any relief in this action.

**DEFENDANTS' AFFIRMATIVE DEFENSES**

1.    Defendants assert that because the Second Amended Complaint (complaint) is framed in both conclusory and vague and ambiguous terms, Defendants cannot anticipate all affirmative defenses and separate matters that may be applicable in this action.  Defendants reserve the right to raise additional affirmative defenses if they are subsequently determined to be applicable based on subsequent investigation or discovery in this action.

2.    Defendants assert that all Plaintiffs' claims, separately and conjunctively, fail because each individual Defendant asserts that he, she or it is entitled to qualified immunity for all actions and omissions that occurred in relation to Plaintiffs' claims (challenged conduct), because the challenged conduct did not violate clearly established law as it existed at the relevant

12

times.  It was not clear to every reasonable official under the circumstances at the relevant times that the challenged conduct of each individual Defendant and deceased individual Dr. Tharratt would violate the rights of Sergeant Polanco or any of the other Plaintiffs.

3.    Defendants assert that all Plaintiffs' claims, separately and conjunctively, fail because those claims arose from, related to, or were caused by the administration and use of covered countermeasures (e.g., decisions on how to provide masks and PPE to staff) during the course of a public health emergency declared by the United States, and thus all their alleged acts and challenged conduct are protected and immune from civil suit and liability as set forth in the Public Readiness and Emergency Preparedness Act (PREP Act), at 42 U.S.C. section 247d-6d.

4.    Defendants assert they are not vicariously liable for any act or omission of any other person, by way of vicarious liability, supervisor liability, respondeat superior, or otherwise.

5.    Defendants assert that Plaintiffs lack standing, including to bring claims that belonged to decedent, Sergeant Polanco.

6.    Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred because the risk of contracting COVID-19 working inside a prison during the COVID-19 pandemic was an inherent risk that Sergeant Polanco knowingly assumed by choosing to continue working his job at San Quentin State Prison during May and June 2020.

7.    [Intentionally blank.]

8.    [Intentionally blank.]

9.    Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred because Respondent's actions were required by law, such as taking action to properly care for medically high-risk incarcerated persons (and to care for incarcerated persons in general) during the COVID-19 pandemic, consistent with the then-current understandings of how COVID-19 was transmitted and how to manage COVID-19 in prison settings.

10.    Defendants assert the facts show that Plaintiffs fail to state any valid claim for relief, including for lack of causation.

11.    Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred because at all relevant times the Defendants' respective actions were taken in good faith and

13

were lawful exercises of official discretion in managing COVID-19 inside prisons during a pandemic, and their respective actions were among the rationale options from which officials chose, without malice, deliberate indifference, gross negligence or recklessness to Plaintiffs' rights, and Defendants were motivated by legitimate, nondiscriminatory reasons, and by business and operational necessity.

12. Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred or reduced by Plaintiffs' failures and the doctrines of comparative fault, contributory negligence, and mitigation of damages.

13. Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred by immunity because the decision to transfer the CIM inmates to San Quentin State Prison and the subsequent decisions in managing the healthcare of inmates at San Quentin State Prison were all decisions taken with the approval of the Federal Receiver and federal District Court overseeing the case in which the Federal Receiver was appointed to oversee the healthcare provided to inmates within CDCR.

14. Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred by estoppel, including judicial estoppel, to the extent that Plaintiffs have made statements relied upon in decisions made in other administrative or judicial forums.

15. Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred because Sergeant Polanco consented to the conduct alleged in this action, including because he was informed of the risks of COVID-19 infection working inside San Quentin State Prison both before and after the transfer of inmates from CIM, and PPE limitations at San Quentin, and yet he voluntarily chose to continue working under those conditions.

16. Defendants assert that all Plaintiffs' claims, both separately and conjunctively, fail because Plaintiffs have failed to join necessary and indispensable parties, including the Federal Receiver.

17. Defendants assert that all Plaintiffs' claims, both separately and conjunctively, fail because Defendants are immune from liability under Cal. Government Code sections 810 et seq., including but not limited to sections 820.2, 820.4, 820.6, 820.8, 821 and 821.4, and immunity for

14

discretionary decisions made by public officials, including under sections 815.2, and section 815.6 (mandatory duties).

18. Defendants assert that they are not liable for injuries caused by others, including under Cal. Government Code sections 815.2, 820.2.

19. Defendants assert that Plaintiffs' claims, separately and conjunctively, are barred by the Eleventh Amendment to the United States Constitution.

20. Defendant CDCR asserts the Rehabilitation Act cause of action fails because the risk of contracting COVID-19 working inside a prison during the COVID-19 pandemic was an inherent risk and essential function of Sergeant Polanco's job working for CDCR.

21. Defendant CDCR asserts the Rehabilitation Act cause of action fails because Sergeant Polanco did not request any workplace accommodation, and no need for accommodation was apparent.

22. Defendant CDCR asserts the Rehabilitation Act cause of action fails because Sergeant Polanco fails to allege, and cannot prove, facts showing that he was discriminated against because of his alleged disability or medical conditions, but instead the Plaintiffs allege that Sergeant Polanco was seeking preferential treatment at work on account of his alleged disability or medical conditions.

23. Defendant CDCR asserts that the Rehabilitation Act cause of action fails because Sergeant Polanco failed to adequately engage in the interactive process to identify his medical limitations that he contends required workplace accommodation by CDCR.

24. Defendants assert they had no constitutional duty to not increase CDCR custody employees' risks of COVID-19 infection during a pandemic because that risk is inherent to CDCR employees working with inmates during a pandemic.  There is a medical center at San Quentin, and the introduction of inmates who have been exposed to, or confirmed to have, infectious diseases such as COVID-19 must continue to occur as part of normal operations, using procedures established by healthcare professionals responsible to determine inmate healthcare matters, and any increased attendant risk of infection to staff who must work around this hazard may be addressed through available PPE.  Further, COVID-19 was in the community at large

15

(and is now endemic), as it is now known to be transmissible by asymptomatic infected persons who would have spread it to San Quentin, and the risk of contracting COVID-19 at San Quentin was unavoidable, and subject to change at any time.  Working around potentially infectious inmates such that contracting disease is possible was a known risk for custody employees during COVID-19 because they knowingly worked around incarcerated persons during a pandemic, including when transporting incarcerated patients for COVID-19 medical care. Disclosure of the transmission of COVID-19 and exposure risks at San Quentin were repeatedly made to San Quentin staff during May and June 2020, including Sergeant Polanco. Finally, Defendant CDCR provided PPE as available and consistent with then-current understanding of COVID-19 transmission, such that Defendants did not violate Plaintiffs' rights.

25.   Defendants allege a defense of offset, including as against Plaintiffs' alleged losses for any negligence-based claims, and/or collateral source payments to Plaintiffs.

### DEFENDANTS' DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF

1.   Defendants demand a jury trial to the extent provided by law.

2.   Defendants pray for judgment as follows:

   a.   That judgment be given in favor of Defendants and against Plaintiffs.

   b.   That Plaintiffs take nothing by this action;

   c.   That Defendants be awarded costs of suit and attorney's fees, as provided by law;

   d.   That Defendants be awarded such other relief as the Court deems fair and proper.

Defs. CDCR, Diaz, Tharratt, Davis, Broomfield, Cryer, Pachynski, Garrigan's Answer to SAC (3:21-cv-06516)

Dated:  March 20, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
FIEL D. TIGNO
Supervising Deputy Attorney General
EDWARD GARCIA, JR.,
Deputy Attorney General

JOSHUA C. IRWIN
Deputy Attorney General
*Attorneys for Defendants CDCR, Diaz,*
*Tharratt, Davis, Broomfield, Cryer,*
*Pachynski, and Garrigan*

OK2021900270
91950261.docx

17

# CERTIFICATE OF SERVICE

Case Name:  ***Gilbert Polanco, et al. v. State of***      No.    **3:21-cv-06516**
            ***California, et al.***

I hereby certify that on <u>March 20, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

---

**STIPULATION AND [PROPOSED] ORDER GRANTING THE FILING OF AN AMENDED ANSWER BY DEFENDANTS CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, RALPH DIAZ, RONALD DAVIS, RONALD BROOMFIELD, CLARENCE CRYER, DR. ALISON PACHYNSKI, DR. SHANNON GARRIGAN AND TINA THARRATT TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

---

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 20, 2026</u>, at Oakland, California.

Ida Martinac

Digitally signed by Ida Martinac
Date: 2026.03.20 16:21:02 -07'00'

| Ida Martinac | |
| --- | --- |
| Declarant | Signature |

OK2021900270
92101384.docx